[Sac. No. 2357. Department One.—September 22, 1917.]

## WALTER REINHARDT, Respondent, v. JOHN REITZ, Appellant.

MALICIOUS PROSECUTION—WANT OF PROBABLE CAUSE—ERRONEOUS INSTRUCTION—EVIDENCE.—In an action for malicious prosecution it is error to instruct the jury that "if there was no probable cause for the prosecution, the law presumes malice on the part of the defendant," and such an instruction is prejudicial and warrants a reversal of a judgment for the plaintiff where the evidence does not warrant the conclusion that the jury could not, under proper instructions, have found a want of malice.

APPEAL from a judgment of the Superior Court of Glenn County. Wm. M. Finch, Judge.

The facts are stated in the opinion of the court.

Frank Freeman, for Appellant.

Ben. F. Geis, and Claude F. Purkitt, for Respondent.

LAWLOR, J.—From a judgment rendered in an action brought for malicious prosecution defendant presents this appeal. The plaintiff was arrested and lodged in jail upon the filing of a complaint by defendant in a justice's court charging him with the crime of burglary. When the preliminary examination was had, the plaintiff was discharged, whereupon he brought this action to recover damages for injury to his reputation and good name and for money expended for counsel fees in defending himself against the charge. The action was tried before a jury, and a verdict rendered for $575 and costs.

It appears from the evidence that the defendant is a German, who was at the time of the arrest of the plaintiff not familiar with the law or with the practice of the courts touching matters involved. For several years prior to and at the time of the alleged burglary in the commission of which it was claimed certain money belonging to defendant was taken, he was conducting a saloon in the town of Willows. His money was always kept hidden in various places in the saloon. Besides some change kept in a cash register, it was his prac-

CLXXVI Cal.—14

tice to place about $30 in gold under a bottle on what was called the back bar. His bartenders used this money when necessary for the making of extra change. The balance of the gold the defendant concealed among the barrels, boxes, and other articles stored in the cellar of his saloon, the sole entrance to which was through a trap-door in the floor of the main barroom. At the time of the burglary he had thus secreted in the cellar about eight hundred dollars in gold. He usually attended to his business alone, and did his own janitor work, but occasionally employed others to assist in tending bar. These bartenders did not have occasion to go into the cellar, for the defendant always brought up the liquors himself and personally replenished the bottles on the bar for the daily consumption. For nearly five weeks the plaintiff had been thus employed to tend bar. He was a fellow countryman, was married, had several children, and, according to the defendant's testimony, had told him that his trade in Germany was that of a locksmith. The plaintiff denies having made any such statement. Although the defendant testified that he often sent the plaintiff into the cellar in the course of his employment, the latter declared that the only time he went there was with a customer who was looking for a barrel, and that he did not then see any money. The evidence does not show that the plaintiff ever had knowledge of any money being kept in the cellar. Part of his duties consisted in opening the saloon in the morning. For this purpose he had been supplied with keys to the front and rear doors, which remained in his possession during the period of his employment.

Plaintiff was compelled to find other employment because the defendant told him that he would do the work himself. Plaintiff found work with one Dave Proulx, a rival saloonkeeper who had a place of business on the same street, and also did janitor work for various persons, including one W. H. Markham. As tending to show defendant's ill will toward plaintiff, testimony was introduced to the effect that many of his former customers had followed plaintiff and given their trade to the Proulx saloon. The defendant was heard to complain that "Walter," meaning the plaintiff, "ran my business down." However, after dispensing with plaintiff's services defendant continued to do his own work.

It further appears that on Monday morning, the day of the burglary, defendant entered his saloon by the back door, as was his custom, the other doors all being securely locked and bolted from the inside, and discovered gravel on the floor leading to the cellar entrance and to the back of the bar. He had thoroughly cleaned the saloon the night before. His suspicions being aroused, he immediately looked for his money which he had last seen on the preceding Saturday evening, and discovered that all of it had been taken. There was evidence tending to show that the place had been burglarized and that the burglar had gained admission by unlocking the rear door. The door was secured by two locks, and required two keys to open it. The defendant testified that he called the city marshal. With him came Markham, who told defendant that plaintiff had not appeared at his place of business to do the janitor work, nor at Proulx's saloon, where he was then employed. Defendant also testified that he then recalled what plaintiff had told him about his trade as a locksmith, and stated to the marshal that he suspected the plaintiff had stolen the money. Markham suggested that a warrant be sworn out, and the marshal assured defendant it was the proper thing to do. But at the trial defendant testified: "I didn't want to arrest him. I wanted the house [Reinhardt's home] searched. I didn't know the difference between a warrant and a search-warrant." At all events it appears that he applied at the justice's court for a warrant against the plaintiff, and was afterward informed that the plaintiff had been arrested and lodged in jail. Not being able to raise the required bail, plaintiff was kept imprisoned for three days. In the meanwhile the district attorney, without consulting defendant, prepared a search-warrant and requested him to sign an affidavit for the purpose of having it issued, which defendant did. Plaintiff's house was searched, but no part of the missing money was found, nor any evidence secured against him. And at the preliminary examination the magistrate found that there was not sufficient cause to believe plaintiff guilty of the offense charged.

The principal point urged by appellant is that the evidence is insufficient to justify the verdict in so far is it implies a finding of want of probable cause for plaintiff's arrest, and the existence of malice. But we are not called upon to consider the sufficiency of the evidence, for the judgment must be

reversed upon another ground. The court below erroneously instructed the jury that "If there was no probable cause for the prosecution, the law presumes malice on the part of John Reitz. Prosecution without sufficient grounds and without probable cause, the result of which is the discharge of the prosecuted, raises the presumption of malice." This statement of the law is not correct. The proper rule is as stated by the court in another instruction: "Malice must be proven the same as any other fact in the case. The want of probable cause does not raise a legal presumption of malice." (*Runo v. Williams,* 162 Cal. 444, [122 Pac. 1082].)

We have set out the evidence somewhat at length in order to determine whether the giving of the erroneous instruction was prejudicial error. In our opinion the state of the evidence will not warrant the conclusion that the jury could not, under proper instructions, have found a want of malice.

Judgment reversed.

Shaw, J., and Sloss, J., concurred.